WESLEY DEYOUNG, Appellant, v. GEORGE M. FOSTER, Guardian, et al., Appellees.

No. 47228.

(Reported in 32 N. W. 2d 664)

JUNE 15, 1948.

Life & Davis, of Oskaloosa, and Jones & White, of Ottumwa, for appellant.

McNett, Kuhns & McNett, of Ottumwa, for appellees.

MULRONEY, C. J.—The safe in a law office in Ottumwa was robbed and a small steel securities box, which was in the safe, was carried away by the robbers. This box contained securities owned by defendants, consisting of twenty registered United States Savings Bonds in the sum of $1,000 each, and certain recorded stock certificates for shares of stock of the value of approximately $5,200, in four corporations. Three days later the plaintiff found the box lying in a creek under a highway bridge outside Ottumwa. When the box was opened by plaintiff, the bonds and stock certificates, which were still in the box, were removed and dried out and then turned over to the sheriff who turned them over to the defendants. Plaintiff brought this suit for reward in the sum of ten per cent of the value of said bonds and shares of stock under the provisions of section 644.13, Code, 1946, which provides, so far as material here, as follows:

"As a reward * * * for finding lost goods, money, bank notes, and other things, before restitution of the property or proceeds thereof shall be made, the finder shall be entitled to ten percent upon the value thereof."

The case was tried upon a stipulation of facts which stated, "the bonds were each on the face of the bond registered in the name as follows: 'Mr. George M. Foster, Guardian of the Estate of Mr. Gordon H. Bell, a minor.'" The stipulation also showed there was endorsed on the face of each bond "Not Transferable" and that "they were payable only to the owner named thereon * * * or the executor or administrator of the estate of the owner named on the face thereof."

The stock certificates were recorded in the name of the defendant guardian on the books of the corporations and it was admitted no transfer of the shares could have been made on the corporations' books without his signature and without his executing other supporting documents.

It was admitted that letters and telegrams went to the corporations and the United States Treasury on the day of, and the day after, the robbery, reporting the theft, and that by fulfilling certain requirements defendants could have obtained from the corporations and the United States Treasury, duplicate certificates and bonds for those reported lost, stolen, or destroyed.

Upon this record the trial court held for defendants.

The trial court, in the course of his written opinion in the case, said:

"What if anything did the defendants lose by the theft of the securities? Did the defendants lose thereby the obligation of the U. S. Government to pay the amount of money loaned to it by the defendants, together with interest thereon? Did the defendants, by the theft of the certificates of stock, thereby lose their interests in the respective companies represented by such certificates? * * * Obviously the obligation of the Government to repay the loan made to it by defendants was not 'taken [away] from defendants.' Certain evidence of that obligation was lost to the defendants, but by the regulations of the treasury department, other evidence of the obligation was recognized by the department. * * * The same may be said for the certificates of stock ownership. Only certain evidence of the ownership of a part of the corporation was stolen or lost. Each of the corporations recognized other and secondary evidence of such ownership. * * * Assuming that the statute applies to securities of the nature here involved, the only loss was that of the evidence of the ownership, and the record is entirely silent as to the value of such evidence. Such value would necessarily be the fair and reasonable market value thereof, and it is difficult to perceive how the mere evidence of the property ownership represented by these nonnegotiable securities would have any market value. Certainly neither the amount of the

government obligation owed defendants, nor the value of the shares owned by the defendants in the respective corporations is the measure of the value of the evidence thereof lost to defendants and found by the plaintiff."

We agree with the reasoning and conclusion of the learned trial court. Without deciding whether such securities are within the statute providing for a reward for "lost goods, money, bank notes, and other things" (section 644.13, supra) we hold the plaintiff would not, under the statute and under this record, be entitled to a reward based on the obligation of the bonds or the market value of the shares of stock. The statute only reaches *things* that are lost. Since the *bond obligations* and *corporate shares* were not lost, the plaintiff was not a finder of such obligations and corporate shares; hence he was not entitled to the reward claimed.

Both sides cite Flood v. City Nat. Bk., 218 Iowa 898, 253 N. W. 509, 95 A. L. R. 1168. In that case we held the finder of the money taken in a bank robbery was entitled, under this statute, to ten per cent of the money he restored to the bank. The opinion holds "stolen money" was "lost money" within the meaning of the above statute and the statute was constitutional as against the charge that it deprived a person of his property without due process of law. This opinion seems to be the only decision of any court which has passed squarely on the constitutionality of a statute providing for a reward to the finder of lost property. See annotation 95 A. L. R. 1176.

The Flood case is easily distinguishable from the instant case. The property involved in the Flood case was money, which is specifically mentioned in the statute, and the loser could not stop payment or secure substitute bills. The loser lost the government obligation with the bank bills that were stolen and it was only by restoration of the stolen bills that the bank recovered the lost government obligations. Here the bonds and stock certificates were not indispensable to the government obligations and corporation shares. They were of no value to the finder. They would soon have been rendered completely valueless by the issuance of duplicates to the defendants. Whatever might be our holding if the propositions decided in the Flood case

766

were again before us as original propositions, we hold the opinion is not authority for the plaintiff's contentions in this case.

The judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur.